## POCOCKE vs. BLOUNT.

1. The ninth section of the act concerning bonds and notes (R. c. 1835,
   p. 105,) was intended to embrace all negotiable paper, except such
   as is specified in the sixth, seventh and eighth sections of that act.
2. In a suit by the endorsee of a promissory note, (not being a negotia-
   ble note within the meaning of the 6th section of the act concerning
   bonds and notes, R. c. 1835, p. 105,) against the endorser, it is not
   necessary to prove a demand upon the maker, and notice to the en-
   dorser
3. It does not seem necessary, in such a suit, that the insolvency of the
   maker should be proved by his taking the insolvent debtor's oath.
   That it was not in the power of the plaintiff, at any time, to have
   made the money due in the note, from the maker by suit, seems suffi-
   cient proof of insolvency; which is a mixed question of law and fact,
   and must be left to the determination of the jury, subject to the in-
   structions of the court.

Error to the St. Louis   Circuit Court.

*Hamilton for Plaintiff.*

1. The court erred in refusing the plaintiff's instructions.
2. The instructions given by the court were erroneous,
for the reasons already stated demand and notice were not
requisite under the statute, nor the declaration.
3. The court erred in overruling the plaintiff's motion for
a new trial.   The instructions refused should have been gi-
ven, those given, being opposite in their character, as a con-
sequence. should have been refused.   1 Esp. 302.   5 Mass.
170.   7 Wendell 165.   1 Sug.  and Rawles 334.   17 Wendell
94-2.   R. C. 105, sec. 9.   2 Breeze 46.   1 vol. Breeze's Rept's.
23 and 231.

*Pisque and Dayton for Def'ts.*

The first question arising in the case as it now stands is: Is it necessary when the maker of a note, at the time of its maturity, is insolvent, that a demand should be made, and notice of non-payment given, to the endorser in order to charge him? 3rd Kent's Com. 110. Nicholson vs. Gonthil J. H. Blackstone's Rep. 609, cited in Baily on Bills, page 314 note 161. Esdaile vs. Sowerby, 11 East. Rep. 114.— Howe vs. Bowes 5 Taunton Rep. 30. Rhode vs Procter 4 Barnwell and Cress 517. Jackson vs. Lichards 2 Caines Rep. 343. French vs. Bank of Columbia 4 Cranch 141. Sandford vs Dillaway 10 Mass Rep. 52. Buck vs. Cotton 2 Conn. Rep. 126. Juniatta Bank vs. Hall 16th Serg. and Rawle 157. Graton vs. Dallhein 6 Greenleaf 476. Hill vs. Martin 12 Martin's Louisiana Rep. 177. Hunter vs. Paice, 1 Mo. Rep. 53 and following.

*Opinion of the Court delivered by Napton Judge.*

Pococke, the assignee of a promissory note, sued Blount, the assignor, in assumpsit. The declaration contained two special counts, besides the common counts.

The first count-avers, after setting forth the note, that a demand was made upon the maker and notice given of non-payment to the endorser; and that the maker, at the time the note became due, and at the commencement of this suit, was insolvent, so that a writ against him would have been unavailing.

The second special count avers demand, and notice of a refusal to pay, and that a suit was commenced, and judgment recovered for the amount of the note against the maker, at the July term of the St. Louis circuit court: (being the term next before the commencement of this suit;) that an execution was issued against the maker, but that in consequence of his having no property or effects, no part of the debt was made. To this declaration defendant plead the general issue.

The plaintiff then, with leave, filed an additional count, which, after setting forth the note, &c., without alledging demand and notice, avers that on the 4th day of June, 1835, when the said note became due and payable, the maker was

W

MAY TERM
1840.

Pococke
vs.
Blount.

insolvent 'and unable to pay the same, and that he continued thus insolvent and unable to pay, up to the time of commencing this suit, and that a writ would, consequently, have been unavailing. To this count, also, defendant plead the general issue.

On the trial of the issue, the plaintiff gave in evidence the following note: "$400,00. Twelve months after date, I promise to pay J. E. Blount or order, the sum of four hundred dollars, for value rec'd with interest thereon at the rate of ten per cent per annum until paid. St. Louis, June 1st. 1839. Tho. N. Harris."—"Pay Wm. H. Pococke—J. E. Blount."

A variety of testimony was then adduced on the part of both plaintiff and defendant, in relation to the question of insolvency, which does not become material in the view I shall take of this case. No evidence was given of a demand or notice. The plaintiff asked for the following instructions:

1. If the jury believe, from the evidence, that the defendant has not sustained any damage, and can sustain none, from the want of demand upon the said Thomas N. Harris, the maker, and notice of non payment, they will find for the plaintiff.

2, Should the jury believe, from the evidence, that Thomas N. Harris, the maker of the note, from the time of its maturity, and up to the commencement of this suit, was insolvent and unable to pay the same, so that a writ or suit against him, by the plaintiff for the amount thereof, would have been unavailing, they will find for the plaintiff; although there be no proof of a demand on him, or of notice of non payment to the defendant as endorser.

3. The jury will find for the plaintiff if they believe, from the evidence, that at no time from the maturity of this note till the commencement of this suit, he could by due course of law have collected this debt, or any part of it, out of property belonging to Harris.

These instructions were refused by the court, and the following were given:

If the jury shall be of opinion, that there was no presentment, or demand of payment, on the maker of the note in

question, or no notice of non-payment given by the plaintiff to the defendant, as endorser, they ought to find for the defendant; or, if the jury shall not be of opinion, from the evidence, that a suit would have been unavailing, if brought by the plaintiff against the maker of the note in question, when said note became due, they ought to find for the defendant; otherwise, the jury ought to find for the plaintiff.— Exceptions were duly taken to these instructions. The jury returned a verdict for the defendant, and plaintiff moved for a new trial on the following grounds: 1. Because the court misinstructed the jury: 2. Because the court erroneously refused the instructions prayed by plaintiff: 3 and 4. Because the verdict was against law and evidence. This motion was overruled and exceptions taken.

The only material question raised on this record, is whether in a suit by an endorsee of such a note as was here sued on, against the endorser, the endorsee must aver and prove a demand upon the maker, and a notice of his refusal to pay to the endorser, in order to hold him liable.

Under the mercantile law, which now forms a part of the common law, this question would present no difficulty. It is not only well settled, that such proof of demand and notice is necessary to charge the endorser, but it seems the prevailing opinion, that even the insolvency of the maker will not excuse the holder from making a demand and giving notice. Chancellor Kent, (2 comm. 110) says: "It is now settled in England, in France, and in this country, that neither the insolvency of the drawer, or drawee, or acceptor, or the fact that the drawer had absconded, does away with the necessity of a demand of payment, and notice to the drawee or endorser; nor does knowledge in the endorser, when he endorsed the paper, of the insolvency of the maker of the note, or drawee of the bill, do away the necessity of notice, in order to charge him."

The current of authorities on this point is unvaried and conclusive. Bayley on Bills 314, and cases there cited. The act of Feb. 4, 1835, contains all the provisions in our statute, relating to this subject. That act is obviously based upon the act of Feb. 10, 1825, containing some additional,

provisions. The act of 1825, on the subject of assignments, is, I believe, plain and easy to be understood, and the numerous decisions of the courts of Virginia, and Kentucky, on similar provisions in the statutes of those States, would form a safe guide to this court, for the settlement of any difficulties which might arise in the interpretation of that act. But the act of 1835, concerning bonds and notes, whilst it substantially adopts all the provisions of the act of 1825, concerning assignments, creates a new class of instruments, and contains certain provisions, in relation to negotiable paper generally, which seems calculated to throw much confusion, and uncertainty, over the whole subject. The sixth section provides, that "every promissory note for the payment of money, expressed on the face thereof to be for 'value received,' negotiable and payable 'without defalcation,' shall be due and payable as therein expressed, and shall have the same effect, and be negotiable in like manner, as inland bills of exchange."

The 7th section says: "The payees and endorsees of *every negotiable note*, payable to them or order, and the holder of every *such* note, payable to bearer, may maintain actions for the sums of money therein mentioned, against the makers and endorsers of them respectively, in like manner as in cases of inland bills of exchange, and not otherwise." The 8th section makes further provisions in relation to the same class of notes. Now it will be observed, that the seventh and eighth sections use words sufficiently general to embrace a large class of promissory notes, which do not come within the description of the sixth section, and declares the rules to govern the construction of those notes to be the same as in cases of inland bills of exchange. But if we give this broad construction to these sections, we must annul the provisions of the second, third, fourth, fifth and ninth sections, which contain substantially, and without any very material alterations, the act of 1825, concerning assignments. These last mentioned sections make several material alterations from the mercantile law regulating assignable paper, and, undoubtedly, were intended to comprise negotiable paper, as well as other bonds and notes; and the only class of

notes designed to be left unaffected by their provisions, were the instruments described in the 6th section.

If the word "*such*" were inserted in the seventh section, before the words "negotiable note," it would render that, and the subsequent section, what the general tenor of the statute would well justify, a mere extension of the provisions of the sixth section, and applicable only to *such* negotiable notes as were described in that section. Whether this was in fact a typographical error, will not now be considered, as it is not material that it should be in this case; but this court, in a previous case, (The State v. Beasley, 5 Mo. Rep. 93,) rejected a word, where it was obviously a typographical error, and I know of no reason why one could not be inserted, where the reasons were equally strong.

The ninth section provides, that the assignment of a bond or note, (other than a negotiable note, as defined by the sixth section,) may maintain an action against the assignor, upon failure to obtain payment from the obligor or maker, only in one of the following cases:

First, if he use due diligence in the institution and prosecution of a suit at law, against the obligor or maker, for the recovery of the money or property due, or damages in lieu thereof.

Second, If the obligor or maker is insolvent, or is not a resident of, or residing within, this State, so that a writ would be unavailing, or could not be instituted.

In looking at this section, in connexion with the other provisions of the act, it is worthy of observation, that:

If this section was not intended to include, and does not include, such notes as were at common law negotiable, excepting only such as were in the sixth section, then the sixth section is to all intents and purposes annulled; because the notes described in the sixth section would, in that event, be precisely on the same footing with all negotiable paper, and the section would have been useless. In addition to this, a consideration of the character, and condition, and feelings of the citizens, for whose benefit this law was enacted, is not without its use, in ascertaining the intent and object of the legislature. I think it is apparent, from all the features of

MAY TERM
1840.

Pococke
vs.
Blount

The ninth
section of the
act concern-
ing bonds and
notes (R. C.
1835, p. 105,)
was intended
to embrace all
negotiable
paper, except
such as is spe-
cified in the
sixth, seventh
and eighth
sections of
that act.

this act, that the legislature desired to accommodate two classes of our citizens, who entertain very different views in relation to what is just in matters of this kind.

The sixth section was intended to meet the views and wishes of the mercantile interest—to give them a class of notes, which should be governed by the law merchant solely; and the other provisions of the statute, were designed to accommodate the larger portion of our community, consisting, chiefly, of agriculturists, and relieve them from the operation of those rules with which they were not familiar, and which they did not desire.

From these considerations I have concluded, that the ninth section of this act was intended to embrace all negotiable paper, except such as is specified in the sixth, seventh and eighth sections, and consequently applies to the note sued on in this case.

The proper construction of the ninth section presents, in my opinion, no difficulties. If we have conjectured rightly, in relation to the objects of this section, and the motives of its framers, it would be a very strange and unnatural interpretation, to presume that the legislature intended to impose additional burthens on the holder of this kind of paper.— The legislature declare, that in order to maintain an action against the endorser, the holder must use due diligence in the institution of a suit at law, against the maker. Can it be fairly inferred, that in addition to this suit, must be superadded a *demand* upon the maker, and a notice of such demand to the endorser? What can be a more solemn demand upon the maker than a suit? It is plain that the institution of a suit, and the common law demand and notice, were not required. The former was substituted for the latter, and stands in lieu of it.

The section then goes further, and declares what shall excuse the bringing of a suit, to wit: if the obligor is insolvent—making it obvious that the institution of a suit was substituted for the demand and notice, and the proof of insolvency, or absence from the state, was substituted, or admitted, in lieu of the institution of a suit.

The holder of the note, then, to maintain his action against

, the endorser, must prove that he has used due diligence in the prosecution of a suit against the maker, or, he may excuse himself from bringing suit by proving that the maker was insolvent, and consequently, a writ would be unavailing and no demand or notice is, in either event, necessary.

This question disposes of this case, for the court instructed the jury, that demand and notice were necessary, and the jury might have found their verdict upon that instruction, and the entire absence of any testimony to prove those facts, without looking into the question of insolvency. But, as that question must ultimately be involved in the final disposition of this case, I will briefly state the views which I understood the court to entertain on that subject.

In Virginia, the rule on this subject, and recognized by the Supreme Court of the United States in Violett v. Patton (5 Cranch, 142,) was, that the jury were to determine, from the facts before them, whether a suit would have been unavailing, or not. Chief Justice Marshall, in delivering the opinion of the court in that case: "It is understood to be the law, that the maker must be sued if he is solvent: but his insolvency dispenses with the necessity of suing him. It is not known, that any decision of the state courts requires that the insolvency should be proved, by taking the oath of an insolvent debtor; nor is it believed that this is the only admissible testimony of the fact of insolvency.— Other testimony may be admitted. It would therefore have been proper to leave it to the jury to determine whether it was, at any time, in the power of the plaintiff to have made the money due on this note, or any part of it, from the maker by suit."

The Kentucky reports are full of cases on this subject, and it mnst be confessed that great strictness was required, and extreme diligence exacted by the courts of that State, under a law precisely the same as the Virginia law, and not very dissimilar from our own. (See the cases collated in 2 Peters R. p. 338, Bank of U. S. v. Weiseger.)

The rule recognized in Violett v. Patton, seems to be the most reasonable rule under our statute. It is a mixed ques-

MAY TERM
1840.

Pococke
vs.
Blount.

In a suit by the endorsee of a promisso ry note, (not being a negotiable note within the meaning of the 6th sect. of the act concerning bonds and notes, R. c. 1835, p. 105,) against the endorser, it is not necessary to prove a demand upon the maker, and notice to the endorser.

It does not seem necessary, in such a suit, that the insolvency of the maker

MAY TERM
1840.

Pococke
vs.
Blount.

should be proved by his taking the insolvent debtor's oath.

tion of law and fact, and must be left to the determination of the jury, subject to the instructions of the court.

Whether the facts proved in this case were sufficient to warrant a finding of insolvency, it is not proper to enquire into, inasmuch as the verdict of the jury, having been found under an erroneous instruction of the court, ought to have been set aside. The judgment of the circuit court must be reversed and the cause remanded.

That it was not in the power of the plaintiff, at any time, to have made the money due in the note, from the maker by suit, seems sufficient proof of insolvency; which is a mixed question of law and fact, and must be left to the determination of the jury, subject to the instructions of the court.